COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-00-336-CV
 
STERLING TRUST COMPANY                                                            APPELLANT
V.
RODERICK ADDERLEY, INDIVIDUALLY                                                APPELLEES
AND ON BEHALF OF THE ESTATE OF ELSIE
WESTMORELAND, JIM AND VICKI ALLISON,
HILDA BANTA, SADYE MILLIE BARBEE,
INDIVIDUALLY AND AS TRUSTEE OF THE
SADYE M. BRIDGES BARBEE REVOCABLE
LIVING TRUST, RAY AND BARBARA BISSELL,
DIANA BOYD, MARGARET MANESS BRIDGES,
INDIVIDUALLY AND ON BEHALF OF THE
ESTATE OF J.T. MANESS, GEORGE EMORY
BRIDGES, DOROTHY CLAUNCH, CLARENCE
AND IVA DAVIS, CAROL ANN AND CHARLES
DENSON, SR., PATSY AND RAYMOND
DIXON, HERCULES AND RUBY ECHOLS, GARY
FARISH, MARTIN AND PATSY HARDIN, NANCY
HARRIS, WILLIE HARRIS, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF BENNIE HARRIS,
JAMES E. AND INA DELL HILL, MAXINE
JACKSON, NANCY KAUFMANN, WALTER AND
GLENDA KAUFMANN, BILL AND GALYA KEITH,
ESSIE LACY, INDIVIDUALLY AND ON BEHALF OF
THE ESTATE OF SWARN LACY, JR., JOE LANGDON,
MANUEL AND MARGARET MARIN, GARY AND
WINIFRED MCDERMOTT, MARJORIE AND ARTHUR
MCDONALD, W.C. AND ROSE MARY MCGEE, H.L.
AND JANIS MERRILL, H.L. MERRILL & SON
CONSTRUCTION CO., INC., DON AND EDITH
MOBLEY, MARY K. PARHAM, BUCK AND
MARTHA PIGG, GENE W. PRESTON, AS
INDEPENDENT EXECUTOR OF THE ESTATE
OF GLADYCE P. ACERS, JAQUITTA M. PUTMAN,
JOANN RUSSELL, CAMILLE SANDERS,
INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX
OF THE ESTATE OF FRED SANDERS, ROLLAND
SANDERS, NORMAN G. AND EILEEN V. WATSON,
DONNA WHITTENTON, JOE D. WILLCOX, JR.,
INDIVIDUALLY AND AS INDEPENDENT EXECUTOR
OF THE ESTATE OF KENNETH R. WILLCOX, AND
INTERVENORS JACK R. MANN, SR., EARL R.
CRIDER AND LETA CRIDER
------------
FROM THE 236
TH DISTRICT COURT OF
TARRANT COUNTY
------------
OPINION
------------
In this securities fraud case, the jury
found that Sterling Trust Company materially aided Norman Cornelius in
committing securities fraud and breached its fiduciary duty as a trustee. In
three multi-faceted issues on appeal, Sterling challenges both of those jury
findings and the trial court's damages calculations. We will affirm the trial
court's judgment in part and reverse the judgment and render in part.
FACTUAL AND PROCEDURAL
BACKGROUND
Appellees are elderly individuals who
invested their retirement funds in an illegal Ponzi scheme(1)
operated by Cornelius, an investment advisor and broker with Sunpoint
Securities. Cornelius convinced appellees to invest their savings and retirement
funds in companies he owned, in exchange for promissory notes or company stock.
Because appellees' retirement funds consisted of "qualified" savings
such as IRAs or lump sum pension distributions, the investments had to be held
by a third-party trustee to retain their qualified tax status. Sterling, who
specializes in holding nonstandard and unregulated securities, served as the
trustee, approving the notes and stock for rollover IRA accounts, then creating
and administering self-directed IRA accounts for appellees. The funds in those
accounts were invested in Cornelius's companies.
The SEC forced Cornelius's companies into
receivership in 1997, rendering appellees' investments in the promissory notes
and stock worthless. Appellees then sued Cornelius, Sunpoint, and Sterling to
recoup their losses. Cornelius died in April 1999. The SEC forced Sunpoint into
receivership in November 1999, and, as a result, appellees' claims against
Sunpoint were severed from this lawsuit. Sterling was the only defendant at the
time of trial.
The jury found that Sterling aided and
abetted Cornelius in committing securities fraud and breached its fiduciary duty
to appellees. The jury also found that Sterling acted with malice in breaching
its fiduciary duty to appellees. Appellees elected to recover on their
securities fraud theory and the trial court rendered judgment for over $6
million against Sterling based on the jury's actual damage findings. In
addition, the trial court awarded appellees $249,999.50--the amount of exemplary
damages found by the jury--for Sterling's malicious breach of fiduciary duty.
The trial court later denied Sterling's motion for new trial and motion for
judgment notwithstanding the verdict. This appeal followed.
AIDING SECURITIES FRAUD
Scienter
In its first issue, Sterling contends that
it cannot be held secondarily liable as an aider-abettor under article 33(F)(2)
of the Texas Securities Act (the TSA) because the jury found that it neither
knew nor could have known of Cornelius's fraudulent representations or
omissions. It is undisputed that this "reasonable care" finding would
have constituted a defense for Sterling if it had been found by the jury to be
primarily liable under the TSA as a seller, buyer, or control person.(2)
Sterling argues, however, that it is entitled to this defense as a secondarily
liable aider because article 581-33(F)(2) makes aiders liable "to the same
extent" as sellers.(3)
Our objective when construing a statute is
to determine and give effect to the legislature's intent.(4)
To ascertain that intent, we look first to the statute's plain language and give
words their ordinary meaning.(5) We must view the
statute's terms in context, and give them full effect.(6)
In doing so, we look at the entire act and not a single section in isolation.(7)
Under the Code Construction Act, we may look to the statute's legislative
history in gleaning the legislature's intent.(8)
We also bear in mind the circumstances under which the statute was enacted, and
the consequences of any particular construction.(9)
Further, we presume that the legislature acted with knowledge of the common law
and court decisions.(10)
The legislature directs us to construe the
TSA "to protect investors."(11)
Therefore, because article 581-33 is remedial in nature in the civil context, it
"should be given the widest possible scope."(12)
Under article 581-33 of the TSA, sellers
are strictly liable if they sell or buy a security "by means of an untrue
statement of a material fact or an omission to state a material fact."(13)
Sellers have a defense to the strict liability provisions of the TSA if they
establish that they "did not know, and in the exercise of reasonable care
could not have known, of the untruth or omission."(14)
Persons who materially aid a seller are
not held strictly liable under the TSA. To recover against an aider, the
plaintiff must establish that the aider acted "with intent to deceive or
defraud or with reckless disregard for the truth or the law."(15)
An aider who acts with such intent or recklessness is liable "to the same
extent as if he were the seller."(16) The
express provisions of the TSA provide no defense to aiders who do not know or
could not have known of a seller's untruth or omission.
It is clear from the express language of
article 581-33 that the legislature intended to create separate and distinct
standards of liability for sellers and for aiders. Under the strict liability
provisions of sections 33(A)(2) and (B), a plaintiff may recover against a
seller without proof that the seller knew or should have known of the untruth or
omission on which the plaintiff's claim is based.(17)
The seller can only defeat liability by proving as an affirmative defense that
he was unaware of the untruth or omission and exercised reasonable care.(18)
By contrast, a plaintiff who seeks to recover against an aider has the more
difficult burden of proving that the aider had intent to deceive or defraud the
buyer, or acted with reckless disregard for the truth or the law.(19)
Thus, while a seller may be strictly
liable for a violation of the TSA without proof of scienter (that is, that he
had knowledge of the untruth or omission and failed to exercise reasonable
care), an aider is not liable unless scienter is proven (that is, intent to
deceive or defraud, or reckless disregard for the truth or the law).(20)
When aider liability is established, however, the TSA allows the plaintiff to
recover damages from the aider "to the same extent" as the plaintiff
would be able to recover against a seller.(21)
In other words, while the burdens of proof for establishing seller and aider
liability are different under the TSA, the extent of their liability is the
same.
We therefore hold as a matter of law that
the jury's finding that Sterling lacked knowledge of Cornelius's untrue
statement or omission does not constitute a defense to Sterling's secondary
liability as an aider. Thus the trial court did not err by denying Sterling's
motion for judgment notwithstanding the TSA verdict against Sterling.
General Awareness
In the alternative, Sterling asserts that
the trial court abused its discretion by refusing to give the jury a
"general awareness" instruction. Sterling fails, however, to point us
to any language in the TSA that would entitle Sterling to an instruction that it
must have been "generally aware" of its role in Cornelius's securities
violation to be held liable as an aider under the TSA. Instead, Sterling relies
on two court of appeals opinions that include a general awareness requirement in
listing the elements for aider liability--Crescendo Investments, Inc. v.
Brice, 61 S.W.3d 465, 472 (Tex. App.--San Antonio 2001, pet. denied), and Frank
v. Bear, Stearns & Co., 11 S.W.3d 380, 384 (Tex. App.--Houston [14th
Dist.] 2000, pet. denied).(22) We find neither
opinion persuasive. The Frank opinion relies heavily on a law review
article that interprets the TSA in light of the federal securities act.(23)
The Brice opinion relies entirely on Frank.(24)
Interpretations of the federal securities
act may be "reliable guides" in interpreting the TSA when "they
contain virtually the same wording."(25)
Where the statutes use materially different language, however, we base our
interpretation on our legislature's language.(26)
Unlike the TSA, the federal securities act
does not provide for secondary aider liability. (27)
Nor does the TSA contain any general awareness language similar to that
contained in the federal securities act. Thus, we decline to follow those
opinions of our sister courts that have concluded that the TSA contains a
general awareness requirement based on interpretations of the materially
different language of the federal securities act.
Sterling's reliance on Insurance Co.
of North America v. Morris(28)
to support its argument that it was entitled to a general awareness instruction
is equally misplaced. In that case, the insurance company challenged the legal
sufficiency of the evidence to support the jury's finding that it was liable as
an aider under the TSA.(29) In concluding that
there was no evidence to support the jury's finding of aider liability, the
supreme court observed, "[a]rticle 581-33 F(2) imposes joint and several
liability on any 'person who directly or indirectly with intent to deceive or
defraud or with reckless disregard for the truth or the law materially aids a
seller, buyer, or issuer of a security.'"(30)
Nowhere in its analysis did the supreme court identify general awareness as an
element of aider liability. Moreover, the trial court's jury instruction that an
aider must be aware of the securities law violation was not challenged on
appeal.(31) The supreme court merely reviewed
the evidence supporting the aider finding "in light of the charge
submitted."(32) Thus, we do not believe Morris
supports Sterling's claim that it was entitled to a general awareness jury
instruction.
The language of the TSA does not require
proof that an aider is generally aware of its role in the securities violation
to be liable as an aider. Because we must give effect to the TSA as written by
the legislature,(33) we hold that the trial
court did not abuse its discretion by failing to give Sterling's requested jury
instruction on general awareness.
Issue Conflict
In the further alternative, Sterling
contends that the jury's finding that Sterling did not know and could not have
known of the untruth or omission on which the securities fraud claim against
Cornelius was based (Question 4) conflicts with the finding that Sterling aided
Cornelius's securities fraud (Question 8). In reviewing jury findings for
conflict, the threshold inquiry is whether the findings are about the same
material fact.(34) To determine whether there is
reversible error, the court must only decide whether the conflict is such that
one answer would establish a cause of action or defense, while the other would
destroy it.(35) The court considers each of the
answers claimed to be in conflict, disregarding the allegedly conflicting
answer, but taking into consideration the rest of the verdict. If one answer
would require judgment for the plaintiff, and the other would require judgment
for the defendant, the answers fatally conflict.(36)
The challenged jury findings do not decide
the same material fact related to the same cause of action or defense. As
explained above, the two findings deal with different causes of action under the
TSA. Question 4 relates to Sterling's defense to appellees' primary
liability claim against Sterling, whereas Question 8 relates to appellees' secondary
liability claim against Sterling.(37) These
two issues have different scienter elements. All that was required to establish
secondary aider liability against Sterling in Question 8 was proof that Sterling
materially aided Cornelius either with intent to deceive or defraud the
appellees, or with reckless disregard for the truth or the law.(38)
The jury's finding in Question 4 that Sterling did not know of Cornelius's
specific untruths or omissions establishes a different fact that is relevant
only to appellees' primary liability claim against Sterling. Thus the jury's
finding in Question 4 that Sterling lacked the scienter necessary to be a seller
does not conflict with its finding in Question 8 that Sterling possessed the
scienter to be an aider.
Sufficiency of the
Evidence
Sterling also challenges the legal and
factual sufficiency of the evidence to support the jury's finding that it aided
Cornelius in committing securities fraud.(39) In
determining a "no-evidence" issue, we are to consider only the
evidence and inferences that tend to support the finding and disregard all
evidence and inferences to the contrary.(40)
Anything more than a scintilla of evidence is legally sufficient to support the
finding.(41) An assertion that the evidence is
"insufficient" to support a fact finding means that the evidence
supporting the finding is so weak or the evidence to the contrary is so
overwhelming that the answer should be set aside and a new trial ordered.(42)
We are required to consider all of the evidence in the case in making this
determination.(43)
It is undisputed in this appeal that
Cornelius operated an illegal Ponzi scheme in which he convinced retirees to
invest their savings and qualified retirement funds (IRAs and lump sum pension
distributions) in companies he owned. Cornelius could not accomplish the scheme
on his own, however, because the qualified funds must be held by a third-party
trustee in order to retain their qualified tax status. Therefore, he turned to
Sterling. Sterling approved the Cornelius-company notes issued to appellees for
IRA rollover accounts and then, as third-party trustee, held the appellees'
qualified savings as investments in Cornelius's companies. Sterling also
reviewed and approved for IRA investment nine stock offerings in Cornelius's
companies, in which appellees also invested through Sterling.
Sterling knew that Cornelius was on both
sides of the transaction, acting as the investment counselor and owning the
companies in which he advised appellees to invest. Sterling also knew that
Cornelius was commingling funds between the companies and commingling qualified
and unqualified funds,(44) yet it did nothing
despite its duty to keep the funds segregated. Sterling's expert admitted that
commingling was a clear indication of a serious problem with Cornelius's
operation and a classic warning of a Ponzi scheme.
Sterling had written safeguards in place
for holding and handling securities to protect its beneficiaries, but it failed
to follow those safeguards in its dealings with Cornelius. Among other things,
Sterling ignored information obtained from appellees in documents Sterling
required them to sign. Sterling took instructions from Cornelius personnel even
though those persons had not been designated by an appellee as having authority
to take action on the appellee's account. Sterling unilaterally transferred
investments from one Cornelius entity to another, enabling Cornelius to avoid
paying the principal balance of notes as they became due. Sterling did not hold
the original notes, deeds of trust, security agreements, or stock certificates,
despite its policy requiring it to do so, but instead reached an agreement
allowing Cornelius, who controlled the entities owing the debt, to hold such
documents. Sterling accepted investments in Cornelius notes even though the
notes were in default. Sterling did not obtain valuation information from
Cornelius on any of the Cornelius investments it held. Finally, Sterling allowed
Cornelius to determine what was owed on a month-to-month basis despite
Sterling's duty to determine the amounts due and the due dates.
On this record, we hold that the evidence
is both legally and factually sufficient to show that Sterling directly or
indirectly, with intent to deceive or defraud or with reckless disregard for the
truth or the law, materially aided Cornelius in committing securities fraud
against appellees.
For the reasons stated above, we overrule
issue one.
DAMAGES
Punitive Damages
In issue three, Sterling contends that the
trial court erred in awarding appellees punitive damages for Sterling's
malicious breach of fiduciary duty. The jury found Sterling liable for both
aiding and abetting securities fraud and breach of fiduciary duty. Although the
jury failed to find that Sterling acted with malice when it aided Cornelius, the
jury did find that Sterling acted with malice when it breached its fiduciary
duties and assessed $249,999.50 in punitive damages for Sterling's malicious
breach of fiduciary duty. Appellees, however, elected recovery under the TSA.
Based on this election, the trial court awarded actual damages to appellees in
the aggregate amount of $6,734,330.00 for Sterling's TSA violations. But the
trial court also awarded appellees $249,999.50 in punitive damages for
Sterling's malicious breach of fiduciary duty.
Sterling complains that appellees are not
entitled to recover actual damages under the TSA and also recover punitive
damages based on appellees' breach of fiduciary duty claim. In response,
appellees contend that the saving language in article 581-33(M), stating "[t]he
rights and remedies provided by this Act are in addition to any other rights
(including exemplary or punitive damages) or remedies that may exist at law or
in equity,"(45) expressly allows recovery
of the punitive damages in addition to the actual damages awarded under the TSA.
Under Texas law, a plaintiff who submits
numerous theories of liability to the jury for the same injury, and who obtains
findings of liability on two or more of those theories, is entitled to only a
single recovery.(46) If prior to entry of
judgment the plaintiff fails to elect the theory on which he wishes to recover,
the trial court must enter judgment on the theory that affords the plaintiff the
greatest recovery.(47)
It is also well-settled that there must be
a finding of actual damage by the jury to support an award of punitive damages.(48)
Punitive damages are contingent on a finding of actual damage because actual
damage is a necessary element of the underlying tort upon which the punitive
damages are to be based.(49)
We are not aware of any authority, and
appellees cite none, giving a plaintiff the right to pick and choose an actual
damage award under one theory and a punitive damage award under an alternative
theory.(50) Rather, the plaintiff is entitled to
judgment on the single theory under which he recovered the greatest
relief.(51) Furthermore, a judgment for punitive
damages must be supported by a judgment for actual damages arising from the tort
on which the punitive damages award is based.(52)
Appellees' argument that the "in
addition to" language of article 581-33(M) allows a plaintiff to add
punitive damages recovered under an alternative theory to actual damages awarded
under the TSA is unavailing. The purpose of the saving language of article
581-33(M) is to confirm that other theories of recovery that provide relief for
a transaction that gives rise to a cause of action under the TSA are not
preempted by the TSA.(53) It is not intended to
permit a plaintiff to mix and match actual and punitive damage awards based on
alternative theories of recovery.(54)
We hold that the trial court reversibly
erred in tacking the jury's punitive damages award for malicious breach of
fiduciary duty onto the actual damages award for Sterling's TSA violations.(55)
Settlement Credits
Sterling also challenges the trial court's
allocation of settlement credits. The sixty-nine appellees entered two lump sum
settlement agreements that together totaled $425,000 to resolve their individual
claims against the settling defendants. The civil practice and remedies code
provides that the sum of the dollar amount of settlement for each claimant is to
be deducted from that claimant's damage recovery.(56)
Sterling elected a dollar-for-dollar credit.(57)
The trial court divided $425,000 by 69 to determine a settlement credit of
$6,159.42 per appellee. Sterling claims that under this formulation, it received
a credit of only $252,536.23. Sterling asserts that the trial court erred
because it did not follow the calculation set forth in Drilex Systems, Inc.
v. Flores,(58) under which it claims it
would have received a credit of $338,365.65.
In Drilex, the supreme court
addressed the allocation of settlement credits among family members whose claims
derived from their husband/father's injury.(59)
The supreme court's holding that the entire family comprised only one claimant
for settlement credit allocation purposes turned on construction of the term
"claimant" as defined in section 33.011 of the civil practice and
remedies code.(60) The supreme court then stated
a formula to use in derivative claimant cases, calculating each individual's
damages based on the percentage of his or her recovery compared to the total
recovery of the multiple person claimant.(61)
This is not a case like Drilex,
however, in which multiple persons holding derivative claims combined to form a
single claimant for credit purposes. Instead, each appellee is a separate
claimant.(62) Thus, each appellee's recovery
should be reduced only by the amount of settlement money already received by
that appellee claimant.(63) Therefore, we
conclude that the formula set forth in Drilex is inapplicable in this
case(64) and hold the trial court did not err in
allocating settlement credits.
Sterling also asserts that the trial court
erred by awarding damages to certain appellees whom Sterling claims made
investments through Cornelius without any direct involvement by Sterling.
Sterling was found liable as an aider and abettor. Aider liability results not
only from direct dealings with the defrauded party, but also when a defendant
"directly or indirectly with intent to deceive or defraud or with reckless
disregard for the truth or the law materially aids a seller . . . of a
security."(65) As an aider, Sterling is
liable to the same extent as the seller, Cornelius, regardless of whether its
dealings with appellees were direct or indirect.(66)
For all of the reasons stated above, we
overrule issue three in part and sustain it in part.
CONCLUSION
We conclude that the trial court erred in
awarding punitive damages to appellees based on the jury's malicious breach of
fiduciary duty finding. Because the award of actual damages under the securities
act affords appellees a greater recovery than a combined award of actual and
punitive damages under appellees' breach of fiduciary duty theory, we reverse
that part of the judgment awarding appellees punitive damages for Sterling's
breach of fiduciary duty and render judgment that appellees take nothing on this
punitive damages claim. We affirm the remainder of the judgment awarding
appellees actual damages for their TSA claims.(67)
 
                                                                      
JOHN CAYCE
                                                                      
CHIEF JUSTICE
PANEL A: CAYCE, C.J.; DAY and DAUPHINOT,
JJ.
 
DELIVERED: July 31, 2003

1. A Ponzi scheme is "an investment swindle in which
some early investors are paid off with money put up by later ones in order to
encourage more and bigger risks." Merriam Webster's Tenth Collegiate
Dictionary 905 (1994).
2. Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2) (Vernon
Supp. 2003). Sellers and control persons will be referred to hereinafter
collectively as "seller" or "sellers."
3. Id. art. 581-33(F)(2).
4. Phillips v. Beaber, 995 S.W.2d 655, 658 (Tex.
1999).
5. Id.; In re Bay Area Citizens Against Lawsuit Abuse,
982 S.W.2d 371, 380 (Tex. 1998) (orig. proceeding).
6. Phillips, 995 S.W.2d at 658.
7. Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996
S.W.2d 864, 866 (Tex. 1999).
8. Tex. Gov't Code Ann. § 311.023(3) (Vernon 1998).
9. Tex. Gov't Code Ann. § 311.023(2).
10. Phillips, 995 S.W.2d at 658; McBride v.
Clayton, 140 Tex. 71, 166 S.W.2d 125, 128 (1942).
11. Tex. Rev. Civ. Stat. Ann. art. 581-10-1(B); Anheuser-Busch
Cos. v. Summit Coffee Co., 934 S.W.2d 705, 708 (Tex. App.--Dallas 1996, no
writ).
12. Anheuser-Busch Cos., 934 S.W.2d at 708
(quoting Flowers v. Dempsey-Tegeler & Co., 472 S.W.2d 112, 115
(Tex. 1971)).
13. Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2), (B).
14. Id. art. 581-33(B), (F)(1); see id.
art. 581-33(A)(2).
15. Id. art. 581-33(F)(2).
16. Id.
17. Id. art. 581-33(A)(2), (B), (C).
18. Id.
19. Id. art. 581-33(F)(2); see also id.
art. 581-33 cmt. on § 33(F)(2); see generally Alan R. Bromberg, Civil
Liability Under Texas Securities Act § 33 (1977) and Related Claims, 32 Sw.
L.J. 867, 891 (1978).
20. Sterling contends that the commentary to the TSA
states that all defendants sued under article 581-33 may rely on the reasonable
care defense, including aiders. The commentary on which Sterling relies,
however, refers only to defendants sued under article 581-33(A)(2) or (B)--sellers,
buyers, and control persons. On the other hand, the commentary concerning
aider liability states that section 33(F)(2) "makes a material aider liable
equally with the violator, but only if the aider has the requisite
scienter," that is, intent to deceive, defraud, or reckless disregard. Tex.
Rev. Civ. Stat. Ann. art. 581-33 cmt. on § 33(F)(2). The relevant commentary
says nothing about the reasonable care defense applying to aiders.
21. Id. art. 581-33(F)(2).
22. According to these two cases, to establish secondary
liability as an aider under the TSA, the plaintiff must show: (1) a primary
violation of the securities laws occurred; (2) the aider had general
awareness of its role in this violation; (3) the aider rendered substantial
assistance in this violation; and (4) the aider either intended to deceive the
plaintiff or acted with reckless disregard for the truth of the representations
made by the primary violator. Brice, 61 S.W.3d at 472; Frank, 11
S.W.3d at 384.
23. Frank, 11 S.W.3d at 384 (citing Keith A.
Rowley, The Sky is Still Blue in Texas: State Law Alternatives to Federal
Securities Remedies, 50 Baylor L. Rev. 99, 182 (1998) (citing Abbot v.
Equity Group, Inc., 2 F.3d 613, 621 (5th Cir. 1993)).
24. Brice, 61 S.W.3d at 472.
25. Anheuser-Busch Cos., 934 S.W.2d at 708.
26. Id.
27. Cent. Bank of Denver, N.A. v. First Interstate
Bank of Denver, N.A., 511 U.S. 164, 177, 114 S. Ct. 1439, 1448, 1455
(1994); see Securities Exchange Act of 1934, 15 U.S.C.A. § 78(j) (West
Supp. 2003); Commodities & Security Exchanges, 17 C.F.R. § 240.10b-1,
.10b-5 (2003).
28. Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667
(Tex. 1998).
29. Id. at 675.
30. Id. (quoting Tex. Rev. Civ. Stat. Ann. art.
581-33(F)(2)).
31. Id.; Ins. Co. of N. Am. v. Morris, 928
S.W.2d 133, 152-53 (Tex. App.--Houston [14th Dist.] 1996), aff'd
in part, rev'd in part, 981 S.W.2d 667 (Tex. 1998).
32. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.
2001); see Morris, 981 S.W.2d at 675-76.
33. In re Doe, 19 S.W.3d 346, 365 (Tex. 2000)
(Gonzales, J., concurring).
34. Bender v. S. Pac. Transp. Co., 600 S.W.2d
257, 260 (Tex. 1980).
35. Little Rock Furniture Mfg. Co. v. Dunn, 148
Tex. 197, 222 S.W.2d 985, 991 (1949).
36. Otis Spunkmeyer, Inc. v. Blakely, 30 S.W.3d
678, 689 (Tex. App.--Dallas 2000, no pet.) (citing Little Rock Furniture
Mfg. Co., 222 S.W.2d at 991)).
37. See Tex. Rev. Civ. Stat. Ann. art.
581-33(A)(2), (F)(2).
38. See id. art. 581-33(F)(2).
39. In its arguments challenging the sufficiency of the
evidence to support the jury's aider finding, Sterling contends that aider
liability requires proof that Sterling was "generally aware of its
role" in Cornelius's fraud and provided "substantial assistance"
to Cornelius; that the jury should have been so instructed, but was not; and,
that we must evaluate the sufficiency of the evidence in light of these omitted
instructions. As discussed above, general awareness is not an element of aider
liability under the TSA. Likewise, we find no support in the TSA for Sterling's
unbriefed, one-sentence complaint that the TSA requires proof of
"substantial assistance" to establish aider liability. The charge
given to the jury on aider liability correctly tracks the TSA. We will,
therefore, review Sterling's sufficiency complaint in light of the court's
charge.
40. Lee Lewis Constr., Inc. v. Harrison, 70
S.W.3d 778, 782 (Tex. 2001); Bradford, 48 S.W.3d at 754; Cont'l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); In re
King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).
41. Lee Lewis Constr., Inc., 70 S.W.3d at 782; Cazarez,
937 S.W.2d at 450; Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).
42. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.
1965).
43. Mar. Overseas Corp. v. Ellis, 971 S.W.2d
402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).
44. For example, an appellee with an investment in
company A would receive payments from Cornelius for that investment from
companies B and C.
45. Tex. Rev. Civ. Stat. Ann. art. 581-33(M).
46. Boyce Iron Works, Inc. v. S.W. Bel Tel. Co.,
747 S.W.2d 785, 787 (Tex. 1988); Birchfield v. Texarkana Mem'l Hosp.,
747 S.W.2d 361, 367 (Tex. 1987).
47. Boyce Iron Works, Inc., 747 S.W.2d at 787; Birchfield,
747 S.W.2d at 367.
48. Nabours v. Longview Sav. & Loan Ass'n,
700 S.W.2d 901, 904 (Tex. 1985).
49. Id.
50. Appellees cite a number of decisions in which Texas
courts have allowed combined statutory and common law remedies under statutes
with similar saving language. See, e.g., Serv. Lloyds Ins. Co. v. Greenhalgh,
771 S.W.2d 688, 695, 697 (Tex. App.--Austin 1989) (upholding common law punitive
damages and statutory attorney's fees; leaving fee award intact and increasing
exemplary award based on trial amendment), rev'd on other grounds, 787
S.W.2d 938 (Tex. 1990); Kish v. Van Note, 692 S.W.2d 463, 467-68 (Tex.
1985) (affirming statutory penalty and fees under Consumer Credit Code and
actual and treble damages under the DTPA); Int'l Armament Corp. v. King,
686 S.W.2d 595, 599 (Tex. 1985) (upholding exemplary damages based on gross
negligence and attorney's fees based on DTPA); Byler v. Garcia, 685
S.W.2d 116, 119 (Tex. App.--Austin 1985, writ ref'd n.r.e.) (affirming award of
actual damages and fees under statutory wrongful eviction claim and common law
exemplary damages). None of these cases, however, involved a judgment awarding
actual damages on one theory of recovery and punitive damages on an alternative
theory of recovery.
51. Boyce Iron Works, Inc., 747 S.W.2d at 787.
52. See Nabours, 700 S.W.2d at 904.
53. See Quest Med., Inc. v. Apprill, 90 F.3d
1080, 1092 (5th Cir. 1996) (construing saving provision for purpose
of determining whether it creates a separate, affirmative right to exemplary
damages on a cause of action under the TSA).
54. In addressing this same question, the Fifth Circuit
Court of Appeals noted a "quandary of questions" created by appellees'
theory:

        
 For example, when determining which theory provides the greatest recovery,
 does the trial court compare only the actual damages awards under each theory,
 leaving any exemplary damages award to be added to the largest actual damages
 award regardless of the theory that produces the exemplary damages award? If
 so, what if the theory producing the largest actual damages award does not
 allow recovery of exemplary damages? If, as in this case, only some of the
 theories upon which the party prevails afford for the recovery of exemplary
 damages, should the district court add the actual and exemplary damages
 awarded under those theories together and compare that total amount of damages
 to the actual damages amount awarded under the theories that do not allow for
 recovery of exemplary damages to determine the theory providing the greatest
 recovery?

Id. at 1093 n.20.
55. See id. at 1094; see also St. Paul Ins.
Co. v. Rakkar, 838 S.W.2d 622, 631 (Tex. App.--Dallas 1992, writ denied)
(reforming judgment to award plaintiff actual and punitive damages on his breach
of duty of good faith and fair dealing claim after concluding that trial court
incorrectly trebled actual damages awarded on the insurance code claim).
In light of this holding, we need not
reach Sterling's other challenges to the punitive damages.
56. Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b)(1)
(Vernon 1997).
57. See id.
58. Drilex Sys., Inc. v. Flores, 1 S.W.3d 112,
123 (Tex. 1999).
59. Id. at 120-24.
60. Id. at 122; see also Tex. Civ. Prac.
& Rem. Code Ann. § 33.011(1); Utts v. Short, 81 S.W.3d 822, 838
(Tex. 2002) (noting that, while Utts was a plurality opinion, a
majority upheld this portion of Drilex) (Owen, J., dissenting).
61. Drilex, 1 S.W.3d at 123.
62. See Tex. Civ. Prac. & Rem. Code Ann. §
33.011.
63. Drilex, 1 S.W.3d at 123 n.10 (citing J.D.
Abrams, Inc. v. McIver, 966 S.W.2d 87, 96-97 (Tex. App.--Houston [1st
Dist.] 1998, pet. denied)).
64. See id.
65. Tex. Rev. Civ. Stat. Ann. art. 581-33(F)(2).
66. Id.
67. We do not reach the arguments under Sterling's second
issue attacking the jury's breach of fiduciary duty finding because we have
affirmed the judgment on appellees' TSA claim. See Tex. R. App. P.
47.1.