Roger Scott **FLOWERS** and John H. Carrell, Petitioners,

v.

**DEMPSEY–TEGELER & CO., Inc.,** Respondent.

No. B–2697.

Supreme Court of Texas.

Oct. 27, 1971.

Don R. Kidd, Lubbock, for petitioners.

Clark, West, Keller, Sanders & Ginsberg, Barefoot Sanders, Dallas, for respondent.

McGEE, Justice.

This case involves The Texas Securities Act and pleas of privilege filed by Dempsey-Tegeler & Co., Inc. Plaintiffs Flowers

and Carrell filed separate suits in Lubbock County, Texas, against Defendants Dempsey-Tegeler & Co., Inc., its two salesmen and the Lubbock office manager. The defendant corporation filed pleas of privilege seeking transfer of these cases to Harris County. The district court in Lubbock County overruled the pleas of privilege. On appeal the two cases were consolidated and the court of civil appeals, one justice dissenting, reversed the judgment and remanded the cause to the trial court with instructions to "transfer each cause, insofar as it relates to the defendant Dempsey-Tegeler & Co., Inc., to the District Court of Harris County, Texas." 465 S. W.2d 208. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Dempsey-Tegeler & Co., Inc., a Delaware corporation with a certificate of authority to do business in Texas, is engaged in the securities business. On December 13, 1968, one Cornelius, a salesman for Dempsey-Tegeler, sold two hundred shares of the common stock of DeVilliers Nuclear Corporation to Roger Flowers. The price that Flowers paid was $6,750.00, or $33.75 per share. On April 17, 1969, Willis, another salesman for Dempsey-Tegeler, sold 100 shares of stock in the same corporation to John Carrell. Carrell paid $2,550, or $25.50 per share. The stock, at the time of the trials on the pleas of privilege, was worth somewhere between 88 cents and $1.25.

The sales were made in Lubbock County, Texas. Plaintiffs were residents of Lubbock County, Texas, and the salesmen and business manager of Defendant Corporation were residents of Lubbock County at the time suit was filed on June 15, 1970. The plaintiffs tendered their stock in De-Villiers Nuclear Corporation into the court and sought the return of the purchase money together with six percent (6%) interest. Both plaintiffs based their cause of action on Article 581, § 33.[1]

Section 33 of The Texas Securities Act provides in part as follows:

"A. Any person who

(1) Offers or sells a security in violation of Sections 7, 9 (or any requirement of the Commissioner thereunder), 12, 23B or any order under 23A of this Act, * * *

(2) * * * is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six percent (6%) per year from the date of payment. * * *"

At the hearings on the pleas of privilege filed by Dempsey-Tegeler (asserting its right to be sued in Harris County, the county of residence of its agent, C. T. Corporation), each plaintiff introduced copies of Dempsey-Tegeler's purchase orders, copies of the stock certificates issued to them and certificates issued by the State Securities Board stating its records failed to reflect that the securities of the De-Villiers Nuclear Corporation have ever been registered by qualification, notification or coordination and that a permit for the sale of those securities in the State of Texas has ever been granted for the sale of such securities.

Section 30 of The Texas Securities Act provides:

"In any prosecution, action, suit or proceeding before any of the several courts of this state based upon or arising out of or under the provisions of this Act, a certificate under the seal of the state, duly signed by the Commissioner, showing compliance or non-compliance with the provisions of this Act respecting compliance or non-compliance with the provisions of this Act by any dealer or salesman, shall constitute prima facie evidence of such compliance or of such

1. Tex.Rev.Civ.Stat.Ann. Art. 581, § 33 (1969), known as "The Texas Securities Act." All statutory references are to Vernon's Annotated Texas Civil Statutes.

non-compliance with the provisions of this Act, as the case may be, and shall be admissible in evidence in any action at law or in equity to enforce the provisions of this Act."

At the time of the hearings, the Defendant's Lubbock office had gone out of business. Both plaintiffs filed controverting pleas which alleged various exceptions to the Texas venue statute, Article 1995, including § 30 (a suit is proper where there is a statutory directive on venue, in this case Article 581, § 16, which requires a securities dealer to consent to be sued where the cause of action arose). Dempsey-Tegeler offered no evidence at either hearing. As noted above, the trial court, on August 17, 1970, overruled both of Dempsey-Tegeler's pleas of privilege.

The majority opinion of the court of civil appeals held that it was error for the trial court to enter an order overruling the pleas of privilege because the plaintiffs failed to establish a cause of action against the corporate defendant. The court reasoned that Section 33 uses only the term "person" in prescribing the civil remedy contained therein and that "person" does not include corporations. The court further held, in the alternative, that even assuming that a corporation is a person for purposes of Section 33, plaintiffs only established a prima facie cause of action which was not sufficient to overcome the defendant's prima facie right to a change of venue under Article 1995. As authority for this second holding the court relied on its own case, Southwestern Transfer Co. v. Slay, 455 S.W.2d 352 (Tex.Civ.App.1970, no writ).

The first question for consideration is whether the term "person" as used in Section 33 of the Securities Act comprehends corporations as well as individuals.

2. Section 4 of The Texas Securities Act was amended. Senate Bill 870, 62nd Legislature, 1971, passed by the Legislature and signed by the Governor amends the

Under Texas general statutes, Article 23 [Definitions] provides as follows:

"The following meaning shall be given to each of the following words, unless a different meaning is apparent from the context:

" * * *

"2. 'Person' includes a corporation.

" * * *."

The court of civil appeals, while mentioning Article 23, § 2, analyzed the entire Act and concluded that the term "person" as used in Section 33 of The Texas Securities Act referred only to individuals.

The Act, considered as a whole, is something less than a model of lucidity in legislative drafting. Section 4 of The Texas Securities Act defines the term "company" to include corporations, persons, partnerships, etc., but does not (or rather did not, as will be noted later; the Act has been recently amended)[2] define the term "person." Although the word "company" is defined to include "person," the disjunctive ("company or person") is used in Sections 5, 12, 24, 28, 31, 32 and 34. On the other hand, the undefined term "person," standing alone, appears in only three sections of the Act: Sections 22, 29 and 33. This incongruity is probably attributable to the fact that different sections of the Act were taken from different sources. It seems clear that Section 33 of The Texas Securities Act was lifted almost verbatim from Section 12 of the 1933 Federal Act codified as 15 U.S.C.A. § 77*l* (1971). The Federal Act defines the word "person" to include corporations. 15 U.S.C.A. § 77b (1971).

The court of civil appeals, in its opinion, and Dempsey-Tegeler here, rely heavily on the fact that Section 29 of The Texas Se-

definition of the words "person" and "company" to include corporations, persons, joint stock companies, limited partnerships, etc.

curities Act, containing certain penal provisions for unregistered stock sales, also uses the term "person" exclusively. The reasoning then goes: (1) Since corporations are not generally criminally liable, to hold that the word "person" in Section 29 includes corporations would be to render the Section unconstitutional; therefore, the word must refer only to individuals in Section 29; (2) Since Section 29 is basically parallel to Section 33, one imposing criminal liability, the other civil ability, the term "person" must refer only to individuals in Section 33.

We are not persuaded. Section 22 of the Act, dealing with advertising of securities, clearly uses the word "person" in the sense of both individuals and corporations. In subdivision A of Section 22 it is provided that it is unlawful for a person to advertise unless such Section is complied with. Then in subdivision B, it is said: "(1) If such person, company, dealer, agent or salesman shall have been registered * * *."

█ The dominant consideration in construing a statute is the intention of the Legislature. We must ascertain the purpose for which the statute was enacted. Calvert v. British-American Oil Producing Co., 397 S.W.2d 839 (Tex.Sup.1965); City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951); 53 Tex. Jur.2d p. 180 Statutes § 125.

Article 10(6) V.A.C.S. under general rules for construction of all civil statutory enactments provides:

"(6) In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

█ It is a matter of common knowledge that most securities dealers in Texas are corporations which are subject to civil remedies only. In Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197 (1940), written when the statute provided no civil remedy, this court stated, in part that (page 199):

" * * * clearly the outstanding purpose of this Act is for the protection of the public. Its object is to regulate the sale of securities and to protect the public from fraud and imposition by those engaged in worthless securities. The public policy of this State with reference to such sales is clearly expressed in this Act."

█ The emergency clause of the Act makes it obvious that the intention of the Legislature was " * * * to prevent fraud on the Texas public." A narrow construction placed on the word "person" in Section 33 would defeat the intention of the Legislature by permitting corporate securities dealers to sell unregistered securities to the public free of any fear from civil suits. We hold that Section 33 of The Texas Securities Act does apply to corporations as well as individuals. Section 33 does not impose any criminal penalties and since it is remedial in nature it should be given the widest possible scope. City of Mason v. West Texas Utilities Co., supra. Even if Section 29 does not apply to corporations (a question not before us) because of its penal nature, there is no reason why its limitations should bind the civil, remedial section.

We come now to the alternative holding of the court of civil appeals; that the plaintiffs only established a prima facie cause of action which was not sufficient to overcome the defendant's prima facie right to a change of venue under Article 1995. The court relied on Southwestern Transfer Co. v. Slay, 455 S.W.2d 352 (Tex.Civ.App. 1970, no writ), holding that the doctrine of res ipsa loquitur cannot form the sole basis for an order overruling a plea of privilege where the plaintiff relies on subdivision 23 of Article 1995 to maintain venue. *Slay* contains language to the effect that proof of a prima facie cause of action is insufficient to overcome the defendant's prima facie right to a change of venue under a plea of privilege. The court of civil ap-

**116**

peals, at any rate, seized on the language of Section 30 of The Securities Act ("* * * certificate * * * shall constitute prima facie evidence of such compliance or of such non-compliance with the provisions of this Act * * *") and held that the plaintiffs here had made out only a prima facie cause of action which would not defeat the defendant's plea of privilege.

 We construe the Commissioner's certificate to mean that these securities have never been registered by qualification, notification, or coordination. The plaintiff, in contesting a plea of privilege, is required to plead and prove a cause of action. If this had been a trial on the merits, the evidence in this record would support a judgment for the plaintiffs. No greater burden is placed on a plaintiff in a venue trial. A. H. Belo Corp. v. Blanton, 133 Tex. 391, 129 S.W.2d 619 (1939), Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300 (1936). Insofar as the *Slay* case is in conflict with this well-established rule it is disapproved.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.