**ANHEUSER–BUSCH COMPANIES, INC. and Campbell Taggart, Inc., Appellants,**

v.

**SUMMIT COFFEE CO. and Dunnam–Snyder Co., Appellees.**

No. 05–92–00389–CV.

Court of Appeals of Texas, Dallas.

Jan. 12, 1996.

William G. Whitehill, Cynthia Hollingsworth, Gardere & Wynne, L.L.P., Dallas, Lois G. Williams, Howrey & Simon, Washington, DC, for Appellants.

Michael G. Brown, Doug K. Butler, Figari & Davenport, L.L.P., Dallas, for Appellees.

Before BAKER [1], BARBER and MORRIS, JJ.

## OPINION ON REMAND

BARBER, Justice.

This is, in part, a securities case. In our original opinion, we held that section 77$l$ of the Securities Act of 1933 [2] applied to private, secondary securities transactions such as the one at issue in this case. *Anheuser–Busch Cos., Inc. v. Summit Coffee Co.*, 858 S.W.2d 928 (Tex.App.—Dallas 1993, writ denied), *judgm't vacated, case remanded, —— U.S. ——*, 115 S.Ct. 1309, 131 L.Ed.2d 192 (1995). We also noted that article 581–33(A)(2) of the Texas Securities Act was "arguably broader" than its federal counterpart, but did not reach the issue of whether it was broader. *Id.* at 941.

The United States Supreme Court vacated our judgment in this case and instructed us to reconsider the case in light of its opinion in *Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). *See Anheuser–Busch Cos., Inc. v. Summit Coffee Co.*, —— U.S. ——, 115 S.Ct. 1309, 131 L.Ed.2d 192 (1995). On remand, we gave the parties the opportunity to submit supplemental briefs and to participate in oral argument. The parties availed themselves of both opportunities.[3] We withdraw the section of our earlier opinion entitled "SECONDARY TRADING."[4] *See Anheuser–Busch*, 858

---

1. The Honorable James A. Baker, Justice, did not participate in the disposition of this appeal due to his appointment to the Texas Supreme Court on October 3, 1995.

2. 15 U.S.C.A. §§ 77a–77aa (West 1981 & Supp. 1995).

3. We also received an amicus brief from the Securities Commissioner of Texas and Professor Alan R. Bromberg. Pursuant to appellees' request, we granted amici leave to participate in oral argument.

4. So there is no misunderstanding, we withdraw only the portion of our earlier opinion extending from the heading "SECONDARY TRADING" through "[w]e overrule the fifth point of error." *See Anheuser–Busch*, 858 S.W.2d at 940–41.

S.W.2d at 940–41. This is now the Court's opinion regarding secondary trading and appellants' fifth point of error.

On remand, Anheuser–Busch and Campbell Taggart assert: (1) Summit Coffee's state and federal securities law claims are legally untenable in light of *Gustafson;* (2) the antiwaiver provisions of the relevant state and federal securities acts do not apply to the release agreed to by Summit Coffee; and (3) recission is unavailable to Summit Coffee because it cannot restore the status quo. Appellants' contentions on remand correspond to their fifth, first, and fourth points of error on original submission respectively.

We need not determine what impact *Gustafson* has on Summit Coffee's federal securities law claims. We conclude the Texas Securities Act is broader than its federal counterpart, applies to the transaction involved in this case, and will support the trial court's judgment. *See* TEX.R.APP.P. 90(a).

## SECONDARY TRADING

In their fifth point of error and their first contention on remand, Campbell Taggart and Anheuser–Busch argue that the trial court erred as a matter of law in rendering judgment because the state and federal securities acts are inapplicable to a secondary trading transaction.

### A. Applicable Law

#### 1. *Gustafson v. Alloyd Co.* and The Securities Act of 1933

Section 77*l* (2) of the Securities Act of 1933 provides in relevant part:

Any person who—

\*　\*　\*　\*　\*　\*

(2) offers or sells a security ... **by means of a prospectus or oral communication,** which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not

have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C.A. § 77*l* (2) (West 1981) (emphasis added). In *Gustafson,* the Supreme Court addressed the question of whether the "right of recission extends to a private, secondary transaction, on the theory that recitations in the purchase agreement are part of a 'prospectus.'" *Gustafson,* 513 U.S. ——, 115 S.Ct. at 1064. The Supreme Court concluded that the antifraud provision of the Securities Act of 1933 (15 U.S.C.A. § 77*l* (2)) did not apply to such private, secondary transactions. *Id.* at ——, 115 S.Ct. at 1073–74. The Supreme Court's opinion is based on the conclusion that the phrase "by means of a prospectus or oral communication" is a phrase of limitation that restricts section 77*l* (2) to public, initial offerings. *Id.* at ——, 115 S.Ct. at 1071.

#### 2. The Texas Securities Act

■ Article 581–33(A)(2) of the Texas Securities Act provides in relevant part:

A person who offers or sells a security ... by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for recission, or for damages if the buyer no longer owns the security.

TEX.REV.CIV.STAT.ANN. art. 581–33(A)(2) (Vernon Supp.1996). As used in the Texas Securities Act, the terms "sale" or "offer for sale" or "sell" "shall include every disposition, or attempt to dispose of a security for value." TEX.REV.CIV.STAT.ANN. art. 581–4(E) (Vernon Supp.1996). The term "sell" means "any act by which a sale is made, and the term 'sale' or 'offer for sale' shall include a subscription, an option for sale, a solicitation of sale, a solicitation of an offer to buy, an

attempt to sell, or an offer to sell, directly or by an agent or salesman, by circular, letter, or advertisement or otherwise...." *Id.* The terms "security" or "securities" include stock. TEX.REV.CIV.STAT.ANN. art. 581-4(A) (Vernon Supp.1996).

Article 581-33(A)(2), particularly prior to the 1977 amendments,[5] "was lifted almost verbatim from" 15 U.S.C.A. § 77l (2). *Flowers v. Dempsey-Tegeler & Co.*, 472 S.W.2d 112, 114 (Tex.1971). However, article 581-33(A)(2) differs from its federal counterpart in that it does not contain the phrase of limitation "by means of a prospectus or oral communication." The language used in the Texas Securities Act is broader than that used in its federal counterpart. Because of this difference between the Texas Securities Act and the Securities Act of 1933, we conclude *Gustafson* does not control our interpretation of article 581-33(A)(2) of the Texas Securities Act.

■ The Texas Legislature did not limit article 581-33 to sales of securities "by means of a prospectus or oral communication." Had the Texas Legislature intended to limit the scope of article 581-33(A)(2), it could have used limiting language, as did Congress.[6] Instead, it broadly defined the terms "sale," "sell," and "security." Further, because article 581-33 is remedial in nature in the civil context, it "should be given the widest possible scope." *Flowers*, 472 S.W.2d at 115. We are to construe the Texas Securities Act "to protect investors." TEX.REV.CIV. STAT.ANN. art. 581-10-1(b) (Vernon Supp. 1996). Given the definitions the legislature gave the relevant terms, the purposes of the Texas Securities Act, and the language of article 581-33(A)(2), we conclude that article 581-33(A)(2) applies to private, secondary securities transactions.

■ Anheuser-Busch and Campbell Taggart urge us to interpret article 581-33(A)(2) in accordance with the Supreme Court's in-

terpretation of section 77l (2) despite the differences in the language used in the two statutes. We decline to do so. Interpretations of the Securities Act of 1933 may be "reliable guides" in interpreting the Texas Securities Act when "they contain virtually the same wording." *Anheuser-Busch*, 858 S.W.2d at 939; *see First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart*, 648 S.W.2d 410, 414 (Tex.App.— Dallas 1983, writ ref'd n.r.e.). However, where the statutes use materially different language, we base our interpretation on our legislature's language.

### B. Application of Law to Facts

Summit Coffee obtained separate, favorable jury findings that Anheuser-Busch and Campbell Taggart violated section 77l (2) and article 581-33(A)(2). The amount of damages was the same under each theory. The trial court made a single award for the violations. Thus, if that portion of the judgment can be supported under either statute, we must overrule Anheuser-Busch's and Campbell Taggart's fifth point of error.

It is undisputed that the subject transaction was accomplished through the sale of securities as those terms are used in the Texas Securities Act. Article 581-33(A)(2) does not contain language limiting its application to public, initial offerings. Therefore, it is irrelevant that the subject transaction was private and secondary. We conclude the subject transaction was within the scope of article 581-33(A)(2). The trial court did not err in rendering judgment for violation of article 581-33(A)(2). We overrule Anheuser-Busch's and Campbell Taggart's fifth point of error.

### ANHEUSER-BUSCH AND CAMPBELL TAGGART'S OTHER CONTENTIONS ON REMAND

On remand, Anheuser-Busch and Campbell Taggart ask us to reexamine our earlier

---

**5.** The 1977 amendments related to defenses to liability and did not affect the portion of the statute relevant to the case before us.

**6.** Anheuser-Busch and Campbell Taggart made a similar argument before the Supreme Court in their petition for certiorari.

Section [77l (2) ], by its very terms, is limited in scope to initial public offerings. It applies

only to a sale of a security "by means of a prospectus or oral communication." When Congress used this language, it was explicitly recognizing that only a particular type of sale is covered. **If the section were meant to apply to all securities sales, there would have been no point to using this language at all.** (Emphasis added.)

opinion regarding the scope of the release and the availability of recission. *See Anheuser-Busch*, 858 S.W.2d at 932–36, 938–40. We decline to do so.

■ *Gustafson* does not impact our earlier analysis of the release and recission issues. Both the Texas Supreme Court and the United States Supreme Court had the opportunity to review these issues and declined to do so. While not an insurmountable bar, the doctrine of *stare decisis* preponderates against reexamining those issues. *See Gutierrez v. Collins*, 583 S.W.2d 312, 317 (Tex. 1979) (*Stare decisis* "creates a strong presumption in favor of the established law...."); *see also Carpet Servs., Inc. v. George A. Fuller Co. of Tex., Inc.*, 802 S.W.2d 343, 347 (Tex.App.—Dallas 1990) (en banc) (Baker, J., dissenting) ("The doctrine of *stare decisis* requires the Court to follow its prior decisions...."), *aff'd*, 823 S.W.2d 603 (Tex.1992). Further, while perhaps not strictly applicable, the law of the case doctrine and its underlying rationale support our decision not to reexamine those portions of our earlier opinion unaffected by *Gustafson. See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986) (stressing the need to narrow the issues in successive stages of litigation in order to "achieve uniformity of decision as well as judicial economy").

This Court has already ruled on Anheuser-Busch's and Campbell Taggart's first and fourth points of error regarding release and the availability of recission. In view of the foregoing policy considerations and the scope of the Supreme Court's mandate, we reaffirm and adopt our analysis of these points on original submission and will not reexamine our earlier holding with respect to these points of error. *See Anheuser-Busch* 858 S.W.2d at 932–36, 938–40.

Our disposition of the appeal is the same as on original submission. *See Anheuser-Busch*, 858 S.W.2d at 944–45.