STERLING TRUST COMPANY, Appellant,

v.

Roderick ADDERLEY, Individually and On Behalf of the Estate of Elsie Westmoreland, Jim and Vicki Allison, Hilda Banta, Sadye Millie Barbee, Individually and as Trustee of the Sadye M. Bridges Barbee Revocable Living Trust, Ray and Barbara Bissell, Diana Boyd, Margaret Maness Bridges, Individually and On Behalf of the Estate of J.T. Maness, George Emory Bridges, Dorothy Claunch, Clarence and Iva Davis, Carol Ann and Charles Denson, Sr., Patsy and Raymond Dixon, Hercules and Ruby Echols, Gary Farish, Martin and Patsy Hardin, Nancy Harris, Willie Harris, Individually and On Behalf of the Estate of Bennie Harris, James E. and Ina Dell Hill, Maxine Jackson, Nancy Kaufmann, Walter and Glenda Kaufmann, Bill and Galya Keith, Essie Lacy, Individually and On Behalf of the Estate of Swarn Lacy, Jr., Joe Langdon, Manuel and Margaret Marin, Gary and Winifred McDermott, Marjorie and Arthur McDonald, W.C. And Rose Mary McGee, H.L. And Janis Merrill, H.L. Merrill & Son Construction Co., Inc., Don and Edith Mobley, Mary K. Parham, Buck and Martha Pigg, Gene W. Preston, as Independent Executor of the Estate of Gladyce P. Acers,

Jaquitta M. Putman, Joann Russell, Camille Sanders, Individually and as Independent Executrix of the Estate of Fred Sanders, Roll Sanders, Norman G. and Eileen V. Watson, Donna Whittenton, Joe D. Willcox, Jr., Individually and as Independent Executor Of The Estate Of Kenneth R. Willcox, and Intervenors Jack R. Mann, Sr., Earl R. Crider and Leta Crider, Appellees.

No. 2–00–336–CV.

Court of Appeals of Texas, Fort Worth.

July 31, 2003.

Rehearing and En Banc Reconsideration Denied Sept. 18, 2003.

Kelly, Hart & Hallman, P.C., Donald E.
Herrmann, Dee J. Kelly, Jr., Fort Worth,

Jenkens & Gilchrist, P.C., Robert B. Gilbreath, V. Elizabeth Kellow, Dallas, for Appellant.

Jose, Henry, Brantley & Keltner, L.L.P., Rickey J. Brantley, David E. Keltner, Karen S. Precella, Fort Worth, Murphy Mahon, Keffler & Farrier, L.L.P., Thomas G. Farrier, Fort Worth, For Appellee.

James Dan Moorhead, for Jack R. Mann.

Panel A CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

In this securities fraud case, the jury found that Sterling Trust Company materially aided Norman Cornelius in committing securities fraud and breached its fiduciary duty as a trustee. In three multifaceted issues on appeal, Sterling challenges both of those jury findings and the trial court's damages calculations. We will affirm the trial court's judgment in part and reverse the judgment and render in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellees are elderly individuals who invested their retirement funds in an illegal Ponzi scheme [1] operated by Cornelius, an investment advisor and broker with Sunpoint Securities. Cornelius convinced appellees to invest their savings and retirement funds in companies he owned, in exchange for promissory notes or company stock. Because appellees' retirement funds consisted of "qualified" savings such as IRAs or lump sum pension distributions, the investments had to be held by a third-party trustee to retain their qualified tax status. Sterling, who specializes in holding nonstandard and unregulated securities, served as the trustee, approving the notes and stock for rollover IRA accounts, then creating and administering self-directed IRA accounts for appellees. The funds in those accounts were invested in Cornelius's companies.

The SEC forced Cornelius's companies into receivership in 1997, rendering appellees' investments in the promissory notes and stock worthless. Appellees then sued Cornelius, Sunpoint, and Sterling to recoup their losses. Cornelius died in April 1999. The SEC forced Sunpoint into receivership in November 1999, and, as a result, appellees' claims against Sunpoint were severed from this lawsuit. Sterling was the only defendant at the time of trial.

The jury found that Sterling aided and abetted Cornelius in committing securities fraud and breached its fiduciary duty to appellees. The jury also found that Sterling acted with malice in breaching its fiduciary duty to appellees. Appellees elected to recover on their securities fraud theory and the trial court rendered judgment for over $6 million against Sterling based on the jury's actual damage findings. In addition, the trial court awarded appellees $249,999.50—the amount of exemplary damages found by the jury—for Sterling's malicious breach of fiduciary duty. The trial court later denied Sterling's motion for new trial and motion for judgment notwithstanding the verdict. This appeal followed.

## AIDING SECURITIES FRAUD

### Scienter

In its first issue, Sterling contends that it cannot be held secondarily liable as an

---

**1.** A Ponzi scheme is "an investment swindle in which some early investors are paid off with money put up by later ones in order to encourage more and bigger risks." MERRIAM WEBSTER'S TENTH COLLEGIATE DICTIONARY 905 (1994).

aider-abettor under article 33(F)(2) of the Texas Securities Act (the TSA) because the jury found that it neither knew nor could have known of Cornelius's fraudulent representations or omissions. It is undisputed that this "reasonable care" finding would have constituted a defense for Sterling if it had been found by the jury to be primarily liable under the TSA as a seller, buyer, or control person.[2] Sterling argues, however, that it is entitled to this defense as a secondarily liable aider because article 581–33(F)(2) makes aiders liable "to the same extent" as sellers.[3]

 Our objective when construing a statute is to determine and give effect to the legislature's intent.[4] To ascertain that intent, we look first to the statute's plain language and give words their ordinary meaning.[5] We must view the statute's terms in context, and give them full effect.[6] In doing so, we look at the entire act and not a single section in isolation.[7] Under the Code Construction Act, we may look to the statute's legislative history in gleaning the legislature's intent.[8] We also bear in mind the circumstances under which the statute was enacted, and the consequences of any particular construction.[9] Further, we presume that the legislature acted with knowledge of the common law and court decisions.[10]

 The legislature directs us to construe the TSA "to protect investors."[11] Therefore, because article 581–33 is remedial in nature in the civil context, it "should be given the widest possible scope."[12]

Under article 581–33 of the TSA, sellers are strictly liable if they sell or buy a security "by means of an untrue statement of a material fact or an omission to state a material fact."[13] Sellers have a defense to the strict liability provisions of the TSA if they establish that they "did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."[14]

Persons who materially aid a seller are not held strictly liable under the TSA. To recover against an aider, the plaintiff must establish that the aider acted "with intent to deceive or defraud or with reckless disregard for the truth or the law."[15] An aider who acts with such intent or recklessness is liable "to the same extent as if

---

2. TEX.REV.CIV. STAT. ANN. art. 581–33(A)(2) (Vernon Supp.2003). Sellers and control persons will be referred to hereinafter collectively as "seller" or "sellers."

3. *Id.* art. 581–33(F)(2).

4. *Phillips v. Beaber,* 995 S.W.2d 655, 658 (Tex.1999).

5. *Id.; In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 380 (Tex.1998) (orig.proceeding).

6. *Phillips,* 995 S.W.2d at 658.

7. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999).

8. TEX. GOV'T CODE ANN. § 311.023(3) (Vernon 1998).

9. TEX. GOV'T CODE ANN. § 311.023(2).

10. *Phillips,* 995 S.W.2d at 658; *McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125, 128 (1942).

11. TEX.REV.CIV. STAT. ANN. art. 581–10–1(B); *Anheuser–Busch Cos. v. Summit Coffee Co.,* 934 S.W.2d 705, 708 (Tex.App.-Dallas 1996, no writ).

12. *Anheuser–Busch Cos.,* 934 S.W.2d at 708 (quoting *Flowers v. Dempsey–Tegeler & Co.,* 472 S.W.2d 112, 115 (Tex.1971)).

13. TEX.REV.CIV. STAT. ANN. art. 581–33(A)(2), (B).

14. *Id.* art. 581–33(B), (F)(1); *see id.* art. 581–33(A)(2).

15. *Id.* art. 581–33(F)(2).

he were the seller."[16] The express provisions of the TSA provide no defense to aiders who do not know or could not have known of a seller's untruth or omission.

It is clear from the express language of article 581–33 that the legislature intended to create separate and distinct standards of liability for sellers and for aiders. Under the strict liability provisions of sections 33(A)(2) and (B), a plaintiff may recover against a seller without proof that the seller knew or should have known of the untruth or omission on which the plaintiff's claim is based.[17] The seller can only defeat liability by proving as an affirmative defense that he was unaware of the untruth or omission and exercised reasonable care.[18] By contrast, a plaintiff who seeks to recover against an aider has the more difficult burden of proving that the aider had intent to deceive or defraud the buyer, or acted with reckless disregard for the truth or the law.[19]

Thus, while a seller may be strictly liable for a violation of the TSA without proof of scienter (that is, that he had knowledge of the untruth or omission and failed to exercise reasonable care), an aider is not liable unless scienter is proven (that is, intent to deceive or defraud, or reckless disregard for the truth or the law).[20] When aider liability is established, however, the TSA allows the plaintiff to recover

damages from the aider "to the same extent" as the plaintiff would be able to recover against a seller.[21] In other words, while the burdens of proof for establishing seller and aider liability are different under the TSA, the extent of their liability is the same.

■ We therefore hold as a matter of law that the jury's finding that Sterling lacked knowledge of Cornelius's untrue statement or omission does not constitute a defense to Sterling's secondary liability as an aider. Thus the trial court did not err by denying Sterling's motion for judgment notwithstanding the TSA verdict against Sterling.

### General Awareness

■ In the alternative, Sterling asserts that the trial court abused its discretion by refusing to give the jury a "general awareness" instruction. Sterling fails, however, to point us to any language in the TSA that would entitle Sterling to an instruction that it must have been "generally aware" of its role in Cornelius's securities violation to be held liable as an aider under the TSA. Instead, Sterling relies on two court of appeals opinions that include a general awareness requirement in listing the elements for aider liability—*Crescendo Investments, Inc. v. Brice*, 61 S.W.3d 465,

---

16. *Id.*

17. *Id.* art. 581–33(A)(2), (B), (C).

18. *Id.*

19. *Id.* art. 581–33(F)(2); *see also id.* art. 581–33 cmt. on § 33(F)(2); *see generally* Alan R. Bromberg, *Civil Liability Under Texas Securities Act § 33 (1977) and Related Claims*, 32 Sw. L.J. 867, 891 (1978).

20. Sterling contends that the commentary to the TSA states that all defendants sued under article 581–33 may rely on the reasonable care defense, including aiders. The commentary on which Sterling relies, however, refers

only to defendants sued under article 581–33(A)(2) or (B)—*sellers, buyers, and control persons*. On the other hand, the commentary concerning aider liability states that section 33(F)(2) "makes a material aider liable equally with the violator, but only if the aider has the requisite scienter," that is, intent to deceive, defraud, or reckless disregard. TEX. REV.CIV. STAT. ANN. art. 581–33 cmt. on § 33(F)(2). The relevant commentary says nothing about the reasonable care defense applying to aiders.

21. *Id.* art. 581–33(F)(2).

472 (Tex.App.-San Antonio 2001, pet. denied), and *Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 384 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).[22] We find neither opinion persuasive. The *Frank* opinion relies heavily on a law review article that interprets the TSA in light of the *federal* securities act.[23] The *Brice* opinion relies entirely on *Frank*.[24]

■ Interpretations of the federal securities act may be "reliable guides" in interpreting the TSA when "they contain virtually the same wording."[25] Where the statutes use materially different language, however, we base our interpretation on our legislature's language.[26]

Unlike the TSA, the federal securities act does not provide for secondary aider liability.[27] Nor does the TSA contain any general awareness language similar to that contained in the federal securities act. Thus, we decline to follow those opinions of our sister courts that have concluded that the TSA contains a general awareness requirement based on interpretations of the materially different language of the federal securities act.

Sterling's reliance on *Insurance Co. of North America v. Morris*[28] to support its argument that it was entitled to a general awareness instruction is equally misplaced. In that case, the insurance company challenged the legal sufficiency of the evidence to support the jury's finding that it was liable as an aider under the TSA.[29] In concluding that there was no evidence to support the jury's finding of aider liability, the supreme court observed, "[a]rticle 581–33 F(2) imposes joint and several liability on any 'person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security.' "[30] Nowhere in its analysis did the supreme court identify general awareness as an element of aider liability. Moreover, the trial court's jury instruction that an aider must be aware of the securities law violation was not challenged on appeal.[31] The supreme court merely reviewed the evidence supporting the aider finding "in light of the charge submit-

---

**22.** According to these two cases, to establish secondary liability as an aider under the TSA, the plaintiff must show: (1) a primary violation of the securities laws occurred; (2) *the aider had general awareness of its role in this violation;* (3) the aider rendered substantial assistance in this violation; and (4) the aider either intended to deceive the plaintiff or acted with reckless disregard for the truth of the representations made by the primary violator. *Brice,* 61 S.W.3d at 472; *Frank,* 11 S.W.3d at 384.

**23.** *Frank,* 11 S.W.3d at 384 (citing Keith A. Rowley, *The Sky is Still Blue in Texas: State Law Alternatives to Federal Securities Remedies,* 50 Baylor L.Rev. 99, 182 (1998)) (citing *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 621 (5th Cir.1993)).

**24.** *Brice,* 61 S.W.3d at 472.

**25.** *Anheuser–Busch Cos.,* 934 S.W.2d at 708.

**26.** *Id.*

**27.** *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 177, 114 S.Ct. 1439, 1448, 1455, 128 L.Ed.2d 119 (1994); *see* Securities Exchange Act of 1934, 15 U.S.C.A. § 78(j) (West Supp.2003); Commodities & Security Exchanges, 17 C.F.R. § 240.10b–1, .10b–5 (2003).

**28.** *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667 (Tex.1998).

**29.** *Id.* at 675.

**30.** *Id.* (quoting Tex.Rev.Civ. Stat. Ann. art. 581–33(F)(2)).

**31.** *Id.; Ins. Co. of N. Am. v. Morris,* 928 S.W.2d 133, 152–53 (Tex.App.-Houston [14th Dist.] 1996), *aff'd in part, rev'd in part,* 981 S.W.2d 667 (Tex.1998).

ted." [32] Thus, we do not believe *Morris* supports Sterling's claim that it was entitled to a general awareness jury instruction.

The language of the TSA does not require proof that an aider is generally aware of its role in the securities violation to be liable as an aider. Because we must give effect to the TSA as written by the legislature,[33] we hold that the trial court did not abuse its discretion by failing to give Sterling's requested jury instruction on general awareness.

### Issue Conflict

 In the further alternative, Sterling contends that the jury's finding that Sterling did not know and could not have known of the untruth or omission on which the securities fraud claim against Cornelius was based (Question 4) conflicts with the finding that Sterling aided Cornelius's securities fraud (Question 8). In reviewing jury findings for conflict, the threshold inquiry is whether the findings are about the same material fact.[34] To determine whether there is reversible error, the court must only decide whether the conflict is such that one answer would establish a cause of action or defense, while the other would destroy it.[35] The court considers each of the answers claimed to be in conflict, disregarding the allegedly conflicting answer, but taking into consideration the rest of the verdict. If one answer would require judgment for the plaintiff, and the

other would require judgment for the defendant, the answers fatally conflict.[36]

The challenged jury findings do not decide the same material fact related to the same cause of action or defense. As explained above, the two findings deal with different causes of action under the TSA. Question 4 relates to Sterling's defense to appellees' *primary liability claim* against Sterling, whereas Question 8 relates to appellees' *secondary liability claim* against Sterling.[37] These two issues have different scienter elements. All that was required to establish secondary aider liability against Sterling in Question 8 was proof that Sterling materially aided Cornelius either with intent to deceive or defraud the appellees, or with reckless disregard for the truth or the law.[38] The jury's finding in Question 4 that Sterling did not know of Cornelius's specific untruths or omissions establishes a different fact that is relevant only to appellees' primary liability claim against Sterling. Thus the jury's finding in Question 4 that Sterling lacked the scienter necessary to be a seller does not conflict with its finding in Question 8 that Sterling possessed the scienter to be an aider.

### Sufficiency of the Evidence

 Sterling also challenges the legal and factual sufficiency of the evidence to support the jury's finding that it aided Cornelius in committing securities fraud.[39]

**32.** *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *see Morris,* 981 S.W.2d at 675–76.

**33.** *In re Doe,* 19 S.W.3d 346, 365 (Tex.2000) (Gonzales, J., concurring).

**34.** *Bender v. S. Pac. Transp. Co.,* 600 S.W.2d 257, 260 (Tex.1980).

**35.** *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 991 (1949).

**36.** *Otis Spunkmeyer, Inc. v. Blakely,* 30 S.W.3d 678, 689 (Tex.App.-Dallas 2000, no pet.) (citing *Little Rock Furniture Mfg. Co.,* 222 S.W.2d at 991).

**37.** *See* Tex.Rev.Civ. Stat. Ann. art. 581–33(A)(2), (F)(2).

**38.** *See id.* art. 581–33(F)(2).

**39.** In its arguments challenging the sufficiency of the evidence to support the jury's aider

In determining a "no-evidence" issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary.[40] Anything more than a scintilla of evidence is legally sufficient to support the finding.[41] An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.[42] We are required to consider all of the evidence in the case in making this determination.[43]

▆ It is undisputed in this appeal that Cornelius operated an illegal Ponzi scheme in which he convinced retirees to invest their savings and qualified retirement funds (IRAs and lump sum pension distributions) in companies he owned. Cornelius could not accomplish the scheme on his own, however, because the qualified funds must be held by a third-party trustee in order to retain their qualified tax status. Therefore, he turned to Sterling. Sterling approved the Cornelius-company notes issued to appellees for IRA rollover accounts and then, as third-party trustee, held the appellees' qualified savings as investments in Cornelius's companies. Sterling also reviewed and approved for IRA investment nine stock offerings in Cornelius's companies, in which appellees also invested through Sterling.

Sterling knew that Cornelius was on both sides of the transaction, acting as the investment counselor and owning the companies in which he advised appellees to invest. Sterling also knew that Cornelius was commingling funds between the companies and commingling qualified and unqualified funds,[44] yet it did nothing despite its duty to keep the funds segregated. Sterling's expert admitted that commingling was a clear indication of a serious problem with Cornelius's operation and a classic warning of a Ponzi scheme.

Sterling had written safeguards in place for holding and handling securities to protect its beneficiaries, but it failed to follow those safeguards in its dealings with Cornelius. Among other things, Sterling ignored information obtained from appellees in documents Sterling required them to sign. Sterling took instructions from Cornelius personnel even though those persons had not been designated by an appel-

---

finding, Sterling contends that aider liability requires proof that Sterling was "generally aware of its role" in Cornelius's fraud and provided "substantial assistance" to Cornelius; that the jury should have been so instructed, but was not; and, that we must evaluate the sufficiency of the evidence in light of these omitted instructions. As discussed above, general awareness is not an element of aider liability under the TSA. Likewise, we find no support in the TSA for Sterling's unbriefed, one-sentence complaint that the TSA requires proof of "substantial assistance" to establish aider liability. The charge given to the jury on aider liability correctly tracks the TSA. We will, therefore, review Sterling's sufficiency complaint in light of the court's charge.

**40.** *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001); *Bradford,* 48 S.W.3d at 754; *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

**41.** *Lee Lewis Constr., Inc.,* 70 S.W.3d at 782; *Cazarez,* 937 S.W.2d at 450; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

**42.** *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

**43.** *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

**44.** For example, an appellee with an investment in company A would receive payments from Cornelius for that investment from companies B and C.

lee as having authority to take action on the appellee's account. Sterling unilaterally transferred investments from one Cornelius entity to another, enabling Cornelius to avoid paying the principal balance of notes as they became due. Sterling did not hold the original notes, deeds of trust, security agreements, or stock certificates, despite its policy requiring it to do so, but instead reached an agreement allowing Cornelius, who controlled the entities owing the debt, to hold such documents. Sterling accepted investments in Cornelius notes even though the notes were in default. Sterling did not obtain valuation information from Cornelius on any of the Cornelius investments it held. Finally, Sterling allowed Cornelius to determine what was owed on a month-to-month basis despite Sterling's duty to determine the amounts due and the due dates.

On this record, we hold that the evidence is both legally and factually sufficient to show that Sterling directly or indirectly, with intent to deceive or defraud or with reckless disregard for the truth or the law, materially aided Cornelius in committing securities fraud against appellees.

For the reasons stated above, we overrule issue one.

### DAMAGES

#### *Punitive Damages*

In issue three, Sterling contends that the trial court erred in awarding appellees punitive damages for Sterling's malicious breach of fiduciary duty. The jury found Sterling liable for both aiding and abetting securities fraud and breach of fiduciary duty. Although the jury failed to find that Sterling acted with malice when it aided Cornelius, the jury did find that Sterling acted with malice when it breached its fiduciary duties and assessed $249,999.50 in punitive damages for Sterling's malicious breach of fiduciary duty. Appellees, however, elected recovery under the TSA. Based on this election, the trial court awarded actual damages to appellees in the aggregate amount of $6,734,330.00 for Sterling's TSA violations. But the trial court also awarded appellees $249,999.50 in punitive damages for Sterling's malicious breach of fiduciary duty.

Sterling complains that appellees are not entitled to recover actual damages under the TSA and also recover punitive damages based on appellees' breach of fiduciary duty claim. In response, appellees contend that the saving language in article 581–33(M), stating "[t]he rights and remedies provided by this Act are in addition to any other rights (including exemplary or punitive damages) or remedies that may exist at law or in equity,"[45] expressly allows recovery of the punitive damages in addition to the actual damages awarded under the TSA.

Under Texas law, a plaintiff who submits numerous theories of liability to the jury for the same injury, and who obtains findings of liability on two or more of those theories, is entitled to only a single recovery.[46] If prior to entry of judgment the plaintiff fails to elect the theory on which he wishes to recover, the trial court must enter judgment on the theory that affords the plaintiff the greatest recovery.[47]

---

**45.** Tex.Rev.Civ. Stat. Ann. art. 581–33(M).

**46.** *Boyce Iron Works, Inc. v. S.W. Bel Tel. Co.,* 747 S.W.2d 785, 787 (Tex.1988); *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 367 (Tex.1987).

**47.** *Boyce Iron Works, Inc.,* 747 S.W.2d at 787; *Birchfield,* 747 S.W.2d at 367.

■ It is also well-settled that there must be a finding of actual damage by the jury to support an award of punitive damages.[48] Punitive damages are contingent on a finding of actual damage because actual damage is a necessary element of the underlying tort upon which the punitive damages are to be based.[49]

■ We are not aware of any authority, and appellees cite none, giving a plaintiff the right to pick and choose an actual damage award under one theory and a punitive damage award under an alternative theory.[50] Rather, the plaintiff is entitled to judgment on the *single* theory under which he recovered the greatest relief.[51] Furthermore, a judgment for pu-

nitive damages must be supported by a judgment for actual damages arising from the tort on which the punitive damages award is based.[52]

■ Appellees' argument that the "in addition to" language of article 581–33(M) allows a plaintiff to add punitive damages recovered under an alternative theory to actual damages awarded under the TSA is unavailing. The purpose of the saving language of article 581–33(M) is to confirm that other theories of recovery that provide relief for a transaction that gives rise to a cause of action under the TSA are not preempted by the TSA.[53] It is not intended to permit a plaintiff to mix and match actual and punitive damage awards based on alternative theories of recovery.[54]

**48.** *Nabours v. Longview Sav. & Loan Ass'n,* 700 S.W.2d 901, 904 (Tex.1985).

**49.** *Id.*

**50.** Appellees cite a number of decisions in which Texas courts have allowed combined statutory and common law remedies under statutes with similar saving language. *See, e.g., Serv. Lloyds Ins. Co. v. Greenhalgh,* 771 S.W.2d 688, 695, 697 (Tex.App.-Austin 1989) (upholding common law punitive damages and statutory attorney's fees; leaving fee award intact and increasing exemplary award based on trial amendment), *rev'd on other grounds,* 787 S.W.2d 938 (Tex.1990); *Kish v. Van Note,* 692 S.W.2d 463, 467–68 (Tex.1985) (affirming statutory penalty and fees under Consumer Credit Code and actual and treble damages under the DTPA); *Int'l Armament Corp. v. King,* 686 S.W.2d 595, 599 (Tex.1985) (upholding exemplary damages based on gross negligence and attorney's fees based on DTPA); *Byler v. Garcia,* 685 S.W.2d 116, 119 (Tex.App.-Austin 1985, writ ref'd n.r.e.) (affirming award of actual damages and fees under statutory wrongful eviction claim and common law exemplary damages). None of these cases, however, involved a judgment awarding actual damages on one theory of recovery and punitive damages on an alternative theory of recovery.

**51.** *Boyce Iron Works, Inc.,* 747 S.W.2d at 787.

**52.** *See Nabours,* 700 S.W.2d at 904.

**53.** *See Quest Med., Inc. v. Apprill,* 90 F.3d 1080, 1092 (5th Cir.1996) (construing saving provision for purpose of determining whether it creates a separate, affirmative right to exemplary damages on a cause of action under the TSA).

**54.** In addressing this same question, the Fifth Circuit Court of Appeals noted a "quandary of questions" created by appellees' theory:

> For example, when determining which theory provides the greatest recovery, does the trial court compare only the actual damages awards under each theory, leaving any exemplary damages award to be added to the largest actual damages award regardless of the theory that produces the exemplary damages award? If so, what if the theory producing the largest actual damages award does not allow recovery of exemplary damages? If, as in this case, only some of the theories upon which the party prevails afford for the recovery of exemplary damages, should the district court add the actual and exemplary damages awarded under those theories together and compare that total amount of damages to the actual damages amount awarded under the theories that do not allow for recovery of exemplary damages to determine the theory providing the greatest recovery?

*Id.* at 1093 n. 20.

We hold that the trial court reversibly erred in tacking the jury's punitive damages award for malicious breach of fiduciary duty onto the actual damages award for Sterling's TSA violations.[55]

### Settlement Credits

■ Sterling also challenges the trial court's allocation of settlement credits. The sixty-nine appellees entered two lump sum settlement agreements that together totaled $425,000 to resolve their individual claims against the settling defendants. The civil practice and remedies code provides that the sum of the dollar amount of settlement for each claimant is to be deducted from that claimant's damage recovery.[56] Sterling elected a dollar-for-dollar credit.[57] The trial court divided $425,000 by 69 to determine a settlement credit of $6,159.42 per appellee. Sterling claims that under this formulation, it received a credit of only $252,536.23. Sterling asserts that the trial court erred because it did not follow the calculation set forth in *Drilex Systems, Inc. v. Flores*,[58] under which it claims it would have received a credit of $338,365.65.

In *Drilex*, the supreme court addressed the allocation of settlement credits among family members whose claims derived from their husband/father's injury.[59] The supreme court's holding that the entire family comprised only one claimant for settlement credit allocation purposes turned on construction of the term "claimant" as defined in section 33.011 of the civil practice and remedies code.[60] The supreme court then stated a formula to use in derivative claimant cases, calculating each individual's damages based on the percentage of his or her recovery compared to the total recovery of the multiple person claimant.[61]

This is not a case like *Drilex*, however, in which multiple persons holding derivative claims combined to form a single claimant for credit purposes. Instead, each appellee is a separate claimant.[62] Thus, each appellee's recovery should be reduced only by the amount of settlement money already received by that appellee claimant.[63] Therefore, we conclude that the formula set forth in *Drilex* is inapplicable in this case [64] and hold the trial court did not err in allocating settlement credits.

■ Sterling also asserts that the trial court erred by awarding damages to certain appellees whom Sterling claims made

---

**55.** See id. at 1094; see also St. Paul Ins. Co. v. Rakkar, 838 S.W.2d 622, 631 (Tex.App.-Dallas 1992, writ denied) (reforming judgment to award plaintiff actual and punitive damages on his breach of duty of good faith and fair dealing claim after concluding that trial court incorrectly trebled actual damages awarded on the insurance code claim).

In light of this holding, we need not reach Sterling's other challenges to the punitive damages.

**56.** Tex. Civ. Prac. & Rem.Code Ann. § 33.012(b)(1) (Vernon 1997).

**57.** See id.

**58.** Drilex Sys., Inc. v. Flores, 1 S.W.3d 112, 123 (Tex.1999).

**59.** Id. at 120–24.

**60.** Id. at 122; see also Tex. Civ. Prac. & Rem. Code Ann. § 33.011(1); Utts v. Short, 81 S.W.3d 822, 838 (Tex.2002) (noting that, while Utts was a plurality opinion, a majority upheld this portion of Drilex ) (Owen, J., dissenting).

**61.** Drilex, 1 S.W.3d at 123.

**62.** See Tex. Civ. Prac. & Rem.Code Ann. § 33.011.

**63.** Drilex, 1 S.W.3d at 123 n. 10 (citing J.D. Abrams, Inc. v. McIver, 966 S.W.2d 87, 96–97 (Tex.App.-Houston [1st Dist.] 1998, pet. denied)).

**64.** See id.

investments through Cornelius without any direct involvement by Sterling. Sterling was found liable as an aider and abettor. Aider liability results *not* only from direct dealings with the defrauded party, but also when a defendant "directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller ... of a security." [65] As an aider, Sterling is liable to the same extent as the seller, Cornelius, regardless of whether its dealings with appellees were direct or indirect.[66]

For all of the reasons stated above, we overrule issue three in part and sustain it in part.

## CONCLUSION

We conclude that the trial court erred in awarding punitive damages to appellees based on the jury's malicious breach of fiduciary duty finding. Because the award of actual damages under the securities act affords appellees a greater recovery than a combined award of actual and punitive damages under appellees' breach of fiduciary duty theory, we reverse that part of the judgment awarding appellees punitive damages for Sterling's breach of fiduciary duty and render judgment that appellees take nothing on this punitive damages claim. We affirm the remainder of the judgment awarding appellees actual damages for their TSA claims.[67]

---

**65.** Tex.Rev.Civ. Stat. Ann. art. 581–33(F)(2).

**66.** *Id.*

**67.** We do not reach the arguments under Sterling's second issue attacking the jury's breach of fiduciary duty finding because we have affirmed the judgment on appellees' TSA claim. *See* Tex.R.App. P. 47.1.