# Court of Appeals
## Tenth Appellate District of Texas

10-24-00064-CV

Nicholas Lind,
Appellant

v.

M3 Fort Worth Developer, LLC and The YoungESTone, LLC,
Appellees

On appeal from the
40th District Court of Ellis County, Texas
Judge Bob Carroll, presiding
Trial Court Cause No. 107204

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

M3 Fort Worth Developer, LLC (M3) and The YoungESTone, LLC (YO) invested in several residential real property development projects operated by Serene Country Homes (Serene) and its affiliate or subsidiary, Windridge A2A Developments, LLC (Windridge). Each development project proposed that M3 and YO would purchase vacant lots, fund the building of homes on those lots, and then Serene would sell them to potential buyers. M3 and YO signed a

number of agreements with Serene, including but not limited to Property Developer Program Management Agreements (PDM) and Construction Management Agreements (CM) for three specific lots purchased by M3 and five purchased by YO. M3 and YO paid Serene and/or Windridge a total of $280,000 for management fees under the PDM agreements and $753,480.20 for construction fees under the CM agreements. Construction on one project was started but left incomplete, and six were never even started. After progress on the projects ceased, Serene and/or Windridge failed to repay M3 or YO.

M3 and YO filed suit against a number of entities and four individuals involved in the residential real property developments. Nicholas Lind (Lind) was named as one of the individual defendants. M3 and YO claimed Lind was involved in a scheme to induce them to sign the contracts related to the investment in and development of real residential property. In the original petition, M3 and YO alleged claims against Lind, and other defendants, for fraud, conspiracy, and violation of the Texas Securities Act.[1] M3 and YO sought actual and exemplary damages along with attorney's fees.

On February 8, 2022, Lind was served with the original petition but never filed an answer. M3 and YO filed their first amended petition on August 9, 2022. The first amended petition modified allegations regarding the method

[1] Additional claims were made against Serene for breach of contract, misappropriation of funds and fraudulent transfer, and breach of fiduciary duty.

of service for some defendants, corrected the spelling of YO's name in paragraph 27, and corrected the firm name of M3 and YO's counsel. The original petition and the first amended petition otherwise contained the same factual allegations, asserted identical causes of action, and prayed for the same relief. Lind was never served with the first amended petition. M3 and YO filed a motion for default judgment against Lind on September 8, 2022. The motion was as to Lind only, not the other defendants, and sought a default judgment based on "the claims in Plaintiff's Original Petition."

On September 21, 2022, the trial court granted M3 and YO's motion for default judgment against Lind. Even though the motion had specifically referenced only the original petition, the trial court's order found that Lind had admitted to the allegations against him in the first amended petition. On July 3, 2023, the trial court granted M3 and YO's motion for default judgment against the remaining defendants that had been served and had not answered.

On August 21, 2023, the trial court conducted a hearing to determine damages payable by the defendants, including Lind. At the time of the damages hearing, Lind still had not filed an answer or entered an appearance, nor did he appear in person or by attorney. Following the hearing, the trial court entered its final judgment awarding actual damages of $529,275.80 to

M3 and $504,204.80 to YO.  The trial court awarded exemplary damages of $1,058,551.60 to M3 and YO, along with $47,940.92 in attorney's fees to M3.

Lind filed a notice of restricted appeal on February 28, 2024, seeking to appeal the September 2022 order granting the motion for default judgment and the August 2023 final judgment.

Lind challenges whether (1) the default judgment is proper because he was never served with a copy of the live petition upon which the default judgment was based, and (2) sufficient evidence was admitted at the default judgment hearing to establish a causal nexus between Lind's conduct and the requested damages.

Issue One

1. Authority

A party can prevail in a restricted appeal only if "(1) it filed notice of the restricted appeal within six months after the judgment was signed; (2) it was a party to the underlying lawsuit; (3) it did not participate in the hearing that resulted in the judgment complained of and did not timely file any post-judgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record."  *Ins. Co. of State of Pa. v. Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009) (citing *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004)).

2. Discussion

Here, the only condition to prevail on a restricted appeal that is in contention is whether the error Lind complains of is apparent on the face of the record. *See Ex parte E.H.*, 602 S.W.3d 486, 495 (Tex. 2020). The "face of the record" in restricted appeal cases consists of the "papers on file in the appeal." *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997). Appellants in restricted appeals are afforded the same scope of review as those in ordinary appeals. *Ex parte E.H.,* 602 S.W.3d 486, 495 (Tex. 2020) (citing *Norman Commc'ns*, 955 S.W.2d at 270).

M3 and YO's choice not to serve Lind with the first amended petition does not constitute error because they were not required to re-serve Lind. "Service of an amended petition on a party that has not appeared is necessary only when a plaintiff seeks a more onerous judgment than prayed for in the original pleading." *Fidelity Guar. Ins. Co. v. Drewery Const. Co., Inc.*, 186 S.W.3d 571, 574 (Tex. 2006) (quoting *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex. 1978)). M3 and YO's first amended petition only amended previously pleaded matters to perfect deficiencies or correct error and did not plead new matters constituting additional claims or defenses. *See* TEX. R. CIV. P. 62. Therefore, because M3 and YO did not seek more onerous relief than the original petition that Lind had been served with, they

were not required to serve Lind with the amended petition before taking a default judgment against him. Error because of lack of service is not reflected on the face of the record.

We overrule Lind's first issue.

Issue Two

1. Authority

When an attack is made upon the legal or factual sufficiency of the evidence to support the trial court's determination of damages in a default judgment, the appellant is entitled to a review of the evidence produced. *Dawson v. Briggs*, 107 S.W.3d 739, 748 (Tex. App.—Houston [1st Dist.] 2003, no pet.). A restricted appeal affords a review of the entire case, as in an ordinary appeal, however the face of the record must reveal the claimed error. *Norman Commc'ns,* 955 S.W.2d at 270. The face of the record consists of all the papers on file in the appeal, including the reporter's record, as they existed in the trial court when the default judgment was entered. *In re E.K.N.,* 24 S.W.3d 586, 590 (Tex. App.—Fort Worth 2000, no pet.). In addition, error that is merely inferred will not suffice. *See Ginn v. Forrester*, 282 S.W.3d 430, 431 (Tex. 2009).

In reviewing a record to determine if legally insufficient evidence is apparent from the face of that record, an appellate court may make that finding

only when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). We consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that supports it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See id.*

In reviewing factual sufficiency, we review all the evidence and reverse only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

2. Discussion

Lind does not challenge liability, but argues that there is insufficient evidence to establish a causal nexus between Lind's conduct and the requested actual and exemplary damages.

The trial court's order granting the default judgment against Lind stated that "Lind has therefore admitted all the allegations against him in Plaintiffs' First Amended Petition, and judgment is entered against him on all of Plaintiffs' causes of action."  In the same order the trial court ordered "that a hearing be held on [M3 and YO's] damages claim on a date to be determined, at which time the Court may receive evidence via affidavit or live testimony."

Fraud and Conspiracy

At the hearing, M3 and YO had the burden of presenting competent evidence of a causal nexus between the material misrepresentation and their alleged injuries.  *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984) (citing TEX. R. CIV. P. 243).  While a default judgment conclusively establishes the "causal nexus between the conduct of the defendant and the event sued upon," the default does not result in an admission "that the event sued upon caused any of the plaintiff's alleged injuries." *Morgan*, 675 S.W.2d at 732.  The allegations in the plaintiff's petition alone do not establish the necessary link between the event sued upon and injuries in a default judgment review. *See Morgan*, 675 S.W.2d at 732–33, *see also* TEX. R. CIV. P. 243; *Alvarez v. Agyemang*, No. 02-19-00301-CV, 2020 WL 719440, at *3 (Tex. App.—Fort Worth Feb. 13, 2020, no pet.).  Proving the causal nexus, that the event sued upon actually caused the plaintiff's alleged injuries, "is part and parcel of

proving the amount of damages to which the plaintiff is entitled." *Morgan*, 675 S.W.2d at 732.

A trial court may award unliquidated damages in a no-answer default judgment case based on affidavits. *Tex. Commerce Bank, Nat. Ass'n v. New*, 3 S.W.3d 515, 516–17 (Tex. 1999). M3 and YO included affidavits from their attorney and the managing member of M3 and YO as exhibits to their motion for default judgment. Each managing member stated that they were familiar with the payments made to "[d]efendants" through the property developer program. The affidavits stated that M3's payments to Serene totaled $529,275.80 and YO's payments to Serene totaled $504,204.40. The affidavits had supporting documents attached. Each affidavit stated that "Defendants never began construction on" five properties for YO and two properties for M3 even though initial payments by YO and M3 had been made for the properties. M3's managing member's affidavit stated that for the third property M3 had paid $217,401.80, "the house was only 40% completed and then abandoned by Defendants." Each affidavit stated, with regard to the payments and homes, that "Defendants have neither returned any of these payments, nor have they completed and sold the homes that these payments were intended to fund."

The limited evidence contained in the two affidavits provided by M3's and YO's managers do not contain any factual assertions that the payments

were caused by anything said or done by Lind and never mention Lind by name.  The affidavits do not contain any factual assertions the payments were caused by anything said or done by any members of the conspiracy.

We acknowledge that liability for participating in a conspiracy has been established by default.  And, once a conspiracy is established the co-conspirators are responsible for all acts done by any of the conspirators in furtherance of the unlawful combination.  *See Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 926 (Tex. 1979).  A "conspiracy depends entirely on the injury caused by the underlying tort; the injury is the damage from the underlying wrong, not the conspiracy itself."  *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968)).  Notably, it does not automatically follow that the damages that were caused by the underlying wrong are attributable to the conspiracy.  *See THPD, Inc. v. Cont'l Imports, Inc.*, 260 S.W.3d 593, 605 (Tex. App.—Austin 2008, no pet.).

We conclude that the affidavit testimony of the managing members is legally insufficient to establish a causal connection between the fraudulent acts and M3's and YO's alleged actual damages.

Texas Securities Act

The Texas Securities Act (TSA)[2] creates "a cause of action for misrepresentations or omissions made in connection with a securities transaction." *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 480 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing TEX. REV. CIV. STAT. ANN. art. 581-33(A)(2)). Because the fraud provision of article 581-33 of the TSA is remedial in nature it should be given the widest possible scope and construed to protect the investor. *See Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 480 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Anheuser-Busch Companies, Inc. v. Summit Coffee Co.*, 934 S.W.2d 705 (1996). Article 581-33(A)(2) of the TSA provides:

> A person who offers or sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security.

TEX. REV. CIV. STAT. ANN. art. 581-33(A)(2)

Article 581-33(A)(2) defines the elements and defenses of a cause of action for misrepresentations or omissions made in connection with a securities transaction. *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444,

---

[2] In 2019, the Legislature codified the Texas Securities Act and, without making substantive changes to the Act, transferred its provisions to the Texas Government Code effective January 1, 2022. *See* Act of May 21, 2019, 86th Leg., R.S., ch. 491 (H.B. 4171), §§ 3.01, 4.01–.02, 2019 Tex. Gen. Laws 1238, 1316 (codified at TEX. GOV'T CODE §§ 4001.001–4008.105). Because it was in effect when suit was filed by M3 and YO, we will cite the former version of the statute.

485 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing TEX. REV. CIV. STAT. ANN. art. 581-33(A)(2); *Duperier v. Tex. State Bank*, 28 S.W.3d 740, 753 (Tex. App.—Corpus Christi 2000, pet. dism'd by agr.)). While monetary damages are available for a buyer only when the buyer no longer owns the investment, rescission is available to the buyer when the buyer still owns the investment. *See Summers v. WellTech, Inc.*, 935 S.W.2d 228, 231 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see also* TEX. REV. CIV. STAT. ANN. art. 581-33(A)(2); *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 666 fn. 7 (Tex. 2015).

M3 and YO pled for "full recission of their investment" in their petition and in the concluding prayer requested damages arising from violations of the TSA. The trial court did not order recission of the transactions in its September 21, 2022, default judgment against Lind or in its August 31, 2023, final judgment. The trial court did award economic and exemplary damages to M3 and YO in its final judgment[3]. Proof of a causal nexus between the event sued upon and the resulting injury is not required to award damages for a claim under article 581-33(A)(2) of the TSA because loss causation is not an element. *See Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 485 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

---

[3] Lind does not challenge the nature of the relief granted by the trial court, only that there is no evidence, or alternatively insufficient evidence, to establish a causal nexus between Lind's conduct (i.e. the event sued upon) and the resulting injuries. We express no opinion on whether or not the award of economic or exemplary damages to M3 and YO was the appropriate form of relief.

Although causal nexus was not established by the evidence for the fraud and conspiracy causes of action, we conclude that M3 and YO were not required to prove loss causation as an element of their claims for securities violations under the TSA.  *See* TEX. REV. CIV. STAT. ANN. art. 581-33(A)(2).

We overrule Lind's second issue.

Conclusion

We affirm the trial court's judgment.

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  April 16, 2026

Before Chief Justice Johnson,
       Justice Smith, and
       Justice Harris
Affirmed
CV06

